**Patricia THORSTED; Stephanie Thorsted, Plaintiffs–Appellants,**

v.

**Tim KELLY, Defendant–Appellee.**

No. 87–6297.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 10, 1988.

Decided Oct. 3, 1988.

Stephen Yagman, Yagman & Yagman, P.C., Los Angeles, Cal., for plaintiffs-appellants.

Eric S. Oto, and Anthony P. Serritella, Cotkin, Collins & Franscell, Los Angeles, Cal., for defendant-appellee.

Before TANG, BOOCHEVER and O'SCANNLAIN, Circuit Judges.

BOOCHEVER, Circuit Judge:

Patricia and Stephanie Thorsted appeal a judgment entered upon a jury verdict in favor of Tim Kelly, a Beverly Hills, California police officer. The Thorsteds filed suit against Kelly for damages under 42 U.S.C. § 1983 (1982), alleging that he used excessive force against them and illegally arrested Stephanie. The Thorsteds contend that the district court improperly instructed the jury on the availability of a qualified immunity defense. We affirm the judgment.

## I

On May 15, 1986, Stephanie Thorsted and her mother, Patricia, had drinks at the Polo Lounge at the Beverly Hills Hotel.[1] The Thorsteds left the lounge without paying a $30 bill. The waiter, Ivan Coso, followed them to a parking lot and requested payment. When Stephanie stated that she had given her money to the bartender, Coso asked the Thorsteds to return to the lounge to identify whom she had paid. Stephanie's identification proved incorrect, and Coso called hotel security. Lawrence Reid responded, and asked the Thorsteds to accompany him to the hotel's security office.

Reid decided to refer the matter to the police. When Beverly Hills Officer Kelly arrived, Reid outlined the dispute and handed him Stephanie's identification cards, which Reid had been holding. Kelly was told that Stephanie could not have paid the bill because Coso was the only lounge employee with access to the computerized cash register. Stephanie insisted that she had paid, and began to cry, scream, and shout obscenities. Kelly stated that while he could not arrest Stephanie without a warrant because the alleged misdemeanor was committed outside his presence, he believed that sufficient cause existed for Coso to make a citizen's arrest for defrauding an innkeeper.

Coso decided to make a citizen's arrest. Kelly explained the requisite procedure to Coso, who in turn informed Stephanie of the charge and filled out an arrest form.

Patricia then offered to pay the bill. Coso took her money, returned her change, and went back to the lounge. With the dispute apparently settled, Kelly left the security office momentarily to radio the police station for permission to release Stephanie, who technically had been arrested by Coso. When Kelly returned, Stephanie cursed him and attempted to grab her identification cards out of his hand. Kelly reminded her that she still was under arrest and ordered her to remain seated until he received instructions.

After attempting to grab the cards again, Stephanie pushed Kelly off balance and started toward the door. Kelly regained his balance, pulled Stephanie away from the door, and attempted to handcuff her. They fell to the floor, and Kelly was able to cuff her right wrist. They continued to struggle. Stephanie hit her head on a bookcase and grabbed the handle of Kelly's gun. Kelly pried her hand off, but Stephanie twisted his thumb. Reid then assisted Kelly, and the two were able to complete handcuffing her.

A backup unit was called and soon arrived. When Stephanie attempted to kick Kelly, another officer tied Stephanie's legs to her handcuffs. She began to hyperventilate, and paramedics were summoned. Upon examination, the paramedics noted that Stephanie was heavily inebriated and had a bump on her head, but had no other injuries. She later was taken into custody. Kelly suffered torn tendons or ligaments in his right hand in the altercation. Patricia's involvement in the incident is unclear.

In January 1987, the Thorsteds filed a section 1983 action against Kelly, Coso, the City of Beverly Hills, and the Beverly Hills Hotel for violating their fourth and fourteenth amendment rights under color of state law. The Thorsteds sought $5 million in general damages and $5 million in punitive damages for the illegal arrest of Stephanie and the use of unreasonable force against Stephanie and Patricia. The hotel's

---

1. The Thorsteds did not refer to the events of May 15, 1986 in their brief. The facts set forth in this section are based on Kelly's brief, which have not been refuted by any reply brief by the Thorsteds.

motion to dismiss was granted without prejudice by District Judge Stephen V. Wilson on June 22, 1987, two weeks before the jury trial began. During trial, Coso reached a settlement with the Thorsteds and the City was granted a directed verdict. Kelly, the only remaining defendant, did not seek dismissal or summary judgment on qualified immunity grounds.

Jury instructions were given on July 10. Judge Wilson stated that the law was "clearly established" in May 1986 that a warrantless arrest could not be made without probable cause and that a police officer was not permitted to use excessive force. Over the Thorsteds' objection, the court also instructed that if the jury found probable cause to be lacking and the force unreasonable, Kelly still could avoid liability for damages if it further determined that he was entitled to qualified immunity:

> The defendant is entitled to a qualified immunity only if he did not know what he did was in violation of law and if a competent public official could not have been expected at the time to know that the conduct was in violation of law.

> In deciding what a competent official would have known about the legality of defendant's conduct, you may consider the nature of the defendant's official duties, the character of his official position, the information which was known to defendant or not known to him, and the events which confronted him. You must ask yourself what a reasonable official in defendant's situation would have believed about the legality of defendant's conduct....

> If you find that a reasonable official in defendant's situation would believe his conduct to be lawful, then this element will be satisfied.

The jury returned a verdict in favor of Kelly, and the district court denied the Thorsteds' motion for a new trial. The Thorsteds filed a timely appeal.

## II

We review jury instructions for abuse of discretion, and give the district court substantial latitude in tailoring them. *Lewy v.* *Southern Pac. Transp. Co.*, 799 F.2d 1281, 1287 (9th Cir.1986). Our inquiry is whether, considering the charge as a whole, the court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading. *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1337, (9th Cir.) *modified,* 773 F.2d 1049 (9th Cir.1985).

 Government officials performing discretionary functions are entitled to qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The relevant inquiry is whether a reasonable government official could have believed that his conduct was lawful, in light of clearly established law and the information he possessed. *Anderson v. Creighton,* — U.S. —, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987); *see Wood v. Sunn,* 852 F.2d 1205, 1209 op. at 9121, 9130 (9th Cir.1988). This is a fact-specific, objective test. *Anderson,* 107 S.Ct. at 3040; *see Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738.

The Thorsteds assert two reasons a qualified immunity instruction should not have been given in this case. First, they contend that qualified immunity was unavailable to Kelly because it was clearly established that the fourth amendment prohibited arrests without probable cause and the use of unreasonable force by police. Second, they contend that qualified immunity is an issue of law that may not be submitted to the jury.

Both arguments appear to center on the theory that the presence of settled law regarding broad constitutional or statutory rights, by itself, precludes an official from claiming qualified immunity at any stage of the litigation. *Anderson,* decided two weeks before the trial in this case, and Ninth Circuit precedent demonstrate that the Thorsteds' view is erroneous.

In *Anderson,* the plaintiffs filed a *Bivens* action for damages against an FBI agent in connection with a warrantless

search of their house. The district court concluded that Anderson's search was legal and granted his motion for summary judgment. The Eighth Circuit reversed, holding that the legality of the search could not be determined on summary judgment and that Anderson was not entitled to qualified immunity because the right against warrantless searches of homes in the absence of probable cause and exigent circumstances was clearly established. 107 S.Ct. at 3037–38.

The Supreme Court reversed and remanded. It restated the principle that whether a government official may be held personally liable for an allegedly unlawful discretionary act "generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken...." *Id.* at 3038 (quoting *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738). These rules, and the "clearly established" rights flowing from them, must be viewed in a particularized sense: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* 108 S.Ct. at 3039; *see Todd v. United States,* 849 F.2d 365, 370–71 (9th Cir.1988).

The Court held that the Eighth Circuit should have considered Anderson's argument that it was *"not* clearly established" that the circumstances he confronted did not constitute probable cause and exigent circumstances. *Anderson,* 107 S.Ct. at 3039. Justice Scalia continued:

> It simply does not follow immediately from the conclusion that it was firmly established that warrantless searches not supported by probable cause and exigent circumstances violate the Fourth Amendment that Anderson's search was objectively legally unreasonable. We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those offi-

cials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable. The same is true of their conclusions regarding exigent circumstances.

*Id.* (citation omitted). The Court ordered that Anderson be permitted to argue that he was entitled to qualified immunity on the ground that he could reasonably have believed his conduct was lawful in light of the clearly established principles relating to warrantless searches. *Id.* at 3040.

*Anderson*'s expanded inquiry into the objective legal reasonableness of a government official's conduct is similar to that undertaken by this court three years earlier in *Bilbrey v. Brown,* 738 F.2d 1462 (9th Cir.1984). There, two fifth-grade students sued school officials under section 1983 for damages and injunctive and declaratory relief in response to allegedly illegal searches, including a strip search. Following a trial, the district court held as a matter of law that the searches were not supported by probable or reasonable cause and that the students did not effectively consent, but it nevertheless submitted to the jury the issue whether the officials were immune from damages. The jury found that the officials were entitled to qualified immunity, and the students appealed.

A divided panel reversed the jury's judgment entered upon the verdict on immunity and remanded for a new trial on damages. Writing for the majority, Judge Poole first discussed the relevant Supreme Court precedents on qualified immunity, including *Harlow,* which was decided between the time of the trial and the panel's decision. *See Bilbrey,* 738 F.2d at 1465–66 & n. 5. He concluded that at the time the searches were performed, "basic Fourth Amendment rights of students had been sufficiently well-established that appellees were adequately on notice." *Id.* at 1466.[2] Yet this determination did not, by itself, resolve the qualified immunity issue:

> However, if [the officials] should have been aware of appellants' Fourth Amend-

---

2. Judge Kilkenny dissented on this issue, arguing that the law regarding student searches had been unclear. 738 F.2d at 1472–73.

ment rights, it is not true that the immunity defense was unavailable to them as a matter of law....

Appellees could ... qualify for immunity from damages if they reasonably, but mistakenly, believed that they had reasonable cause or probable cause to search appellants. Similarly, if the appellees reasonably believed that [the students] had legally consented to the search, they would also be entitled to such immunity. And although the antecedent inquiry, whether legal rights have been settled, may often best be resolved by the trial judge, *see Harlow v. Fitzgerald*, the existence of a reasonable belief that a search is lawful, viewed in light of the "settled" nature of the law, is a question for the trier of fact.

*Id.* at 1466–67 (citation omitted).

Upon examination of the evidence presented to the jury, the majority nevertheless found that the officials had not "satisfied their burden to show affirmatively that their conduct 'was justified by an objectively reasonable belief that it was lawful.'" *Id.* at 1469 (quoting *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572 (1980)).[3] Accordingly, it reversed the trial court's denial of the students' motion for judgment notwithstanding the verdict. *Id.*

Because qualified immunity entitles government officials to "an *immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original), it is essential that "insubstantial claims" be resolved as quickly as possible. *Anderson*, 107 S.Ct. at 3039 n. 2; *Harlow*, 457 U.S. at 817–18, 102 S.Ct. at 2737–38. When available, entitlement to qualified immunity may be established as a matter of law by the district court on a motion to dismiss, for summary judgment, or for a directed verdict. Our discussion of *Bilbrey* indicates that when there are triable issues of fact of a reason-

able belief that a search is lawful, viewed in light of the settled nature of the law, these issues are for the jury. *See Bilbrey*, 738 F.2d at 1467. In this case, the question of whether a reasonable officer placed in the circumstances faced by Kelly could reasonably believe that his conduct was legal is a fact-specific one, and was appropriately given to the jury.

At least five other circuits share our view that qualified immunity from damages may be asserted at trial. *See, e.g., B.C.R. Transp. Co. v. Fontaine*, 727 F.2d 7, 10 (1st Cir.1984); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 456 F.2d 1339, 1347–48 (2d Cir.1972); *McElveen v. County of Prince William*, 725 F.2d 954, 956–58 (4th Cir.), *cert. denied*, 469 U.S. 819, 105 S.Ct. 88, 83 L.Ed.2d 35 (1984); *Bauer v. Norris*, 713 F.2d 408, 411 & n. 6 (8th Cir.1983); *Bledsoe v. Garcia*, 742 F.2d 1237, 1240 (10th Cir.1984). We recently reaffirmed *Bilbrey*'s conclusion on this point. *Schlegel v. Bebout*, 841 F.2d 937, 945 (9th Cir. 1988). The Seventh Circuit, in contrast, has held that the question is one of law to be decided by the court. *Llaguno v. Mingey*, 763 F.2d 1560, 1569 (7th Cir.1985) (en banc).

The Thorsteds fail to address the applicability of *Anderson* in this case and attempt to avoid our holding in *Bilbrey* by arguing that it was wrongly decided or that it conflicts with a number of Ninth Circuit decisions. We do not agree.

*Wood v. Ostrander*, 851 F.2d 1212 (9th Cir.1988), *Estate of Conners v. O'Connor*, 846 F.2d 1205 (9th Cir.1988), *Schwartzman v. Valenzuela*, 846 F.2d 1209 (9th Cir.1988), *Merritt v. Mackey*, 827 F.2d 1368 (9th Cir. 1987), and *Lowe v. City of Monrovia*, 775 F.2d 998 (9th Cir.1985), *amended*, 784 F.2d 1407 (9th Cir.1986), were appeals of summary judgment decisions. *Ostlund v. Bobb*, 825 F.2d 1371 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988) similarly concerned a motion to dismiss. None involves the issue

---

3. In addition to *Gomez*, the majority quoted *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), and *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 474 (1974), in its discussion of qualified immunity.

However, the *Bilbrey* court clearly recognized that the subjective element of the good faith immunity doctrine had been eliminated by *Harlow*. *See Bilbrey*, 738 F.2d at 1465 n. 5.

of qualified immunity from damages at trial.

In *Roberto v. Bordallo*, 839 F.2d 573 (9th Cir.1988), we affirmed the district court's grant of summary judgment to a section 1983 plaintiff because no triable issue of fact existed regarding the defendant's liability. Similarly, in *Flores v. Pierce*, 617 F.2d 1386, 1392 (9th Cir.), *cert. denied*, 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980), after reviewing the evidence presented at trial, we held that an immunity instruction was inappropriate because "[n]o official" could have believed that acts of racial discrimination were lawful.

We hold that the district court did not err in this case by submitting a qualified immunity instruction to the jury. Without approving the exact wording of the instruction, we conclude that the law regarding qualified immunity was fairly and adequately presented. The jury was instructed to evaluate the objective reasonableness of Kelly's conduct, viewed in light of settled law and the information he possessed at the time of the incident. This was proper. *See Bilbrey*, 738 F.2d at 1467.

## CONCLUSION

We AFFIRM. Kelly's motions for judicial notice and sanctions are denied.