**John MINCIELI, Plaintiff,**

v.

**Audrey BRUDER, Defendant.**

**No. 91–6455–Civ.**

United States District Court,
S.D. Florida.

March 7, 1994.

**514**

Arthur M. Wolff, Fort Lauderdale, FL, Paul A. McKenna, Miami, FL, for plaintiff.

Michael Ross Piper, Johnson, Anselmo, et al., Ft. Lauderdale, FL, for defendant.

## ORDER GRANTING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon Defendant Audrey Bruder's renewed motion for judgment as a matter of law and/or motion for judgment notwithstanding verdict, pursuant to *Fed.R.Civ.P.* 50. Preliminarily, the Court notes that the 1991 revisions to the Federal Rules of Civil Procedure abolished the terms "directed verdict" and "judgment notwithstanding verdict," in favor of the all inclusive term "judgment as a matter of law." *Fed.R.Civ.P.* 50 advisory committee's note. Therefore, the Court denies as moot the defendant's alternative motion for judgment notwithstanding verdict. For the reasons stated below, however, the Court grants the defendant's motion for judgment as a matter of law.

### PROCEDURAL BACKGROUND

Plaintiff John Mincieli brought this action for violation of his constitutional rights, pursuant to 42 U.S.C. § 1983, as a result of his arrest by Defendant Audrey Bruder, a police officer with the City of Sunrise. In his complaint, Mincieli alleged that Bruder arrested him without probable cause and performed an unreasonable search and seizure of his premises and property. Mincieli sought general, special and punitive damages under 42 U.S.C. § 1983 and attorney's fees and court costs under 42 U.S.C. § 1988. As part of her answer, Bruder asserted that she was entitled to qualified or good faith immunity from liability under 42 U.S.C. § 1983. Bruder, however, did not seek a ruling on this issue prior to trial.[1]

The action came before the Court and a jury for trial. At the close of the plaintiff's case in chief, and again at the close of all the evidence, Bruder moved for judgment as a matter of law, pursuant to *Fed.R.Civ.P.* 50(a). The Court denied both motions as to Mincieli's claim that Bruder arrested him without probable cause. The Court, however, granted the motion at the close of all the evidence as to Mincieli's claim that Bruder performed an unreasonable search and seizure of his premises and property. The jury returned a verdict for Mincieli. In the verdict form, the jury answered the special interrogatory submitted by the Court as follows:

Interrogatory # 1: "Do you find from a preponderance of the evidence that the defendant violated plaintiff's constitutional rights by arresting him without probable cause, under the circumstances described by the Court in its instructions?"

Answer: "Yes."

The jury then awarded Mincieli special, monetary and/or economic damages in the amount of $1,000,000 and punitive damages in the amount of $300,000.

In accordance with *Fed.R.Civ.P.* 50(b), Bruder renewed her motion for judgment as a matter of law after trial.[2] Bruder argues that she is entitled to judgment as a matter of law because: (1) probable cause existed for Mincieli's arrest as a matter of law; and (2) Bruder is entitled to qualified immunity from liability under 42 U.S.C. § 1983.

---

1. At one point in the proceedings, Bruder sought and obtained a trial continuance for the purpose of filing a summary judgment motion, but she never filed such a motion.

2. In her motion, Bruder did not join a motion for new trial under Rule 59, as permitted by Rule 50(b).

## STANDARD OF REVIEW

■ In reviewing a motion for judgment as a matter of law, the Court must

consider all of the evidence—not just the evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the [motion] is proper. On the other hand, if there is substantial evidence opposed to the [motion], that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the [motion] should be denied.

*Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir.1990) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc)).

## THE EVIDENCE PRESENTED AT TRIAL

At the time of his arrest, Mincieli owned a car-towing business located within the City of Sunrise. Officer Bruder first came to Mincieli's towing yard in August 1988 to investigate Mincieli's complaint that some of the cars in his yard had been burglarized and vandalized. A 1986 Subaru registered to Judie Rochelle Minkoff was one of the cars included in the report. Over the next several months, Bruder investigated the ownership status of the Subaru. As a result of such investigation, Bruder filed a probable cause affidavit and supporting documentation with the state attorney's office, which resulted in the issuance of a capias for Mincieli's arrest. Pursuant to the capias, Bruder arrested Mincieli in May 1989 for the following crimes: third degree felony of motor vehicle theft; second degree felony of dealing in stolen property; third degree felony of notary public violation by false acknowledgment; and third degree felony of fraudulent transfer of a motor vehicle title. Although Mincieli was prosecuted for two of these charges; namely, motor vehicle theft and dealing in stolen property, the prosecution ended in dismissal.

Mincieli, a notary public in the State of Florida, testified that the owner of the Subaru, Judie Minkoff, had signed the transfer of title section on the back of the Subaru's certificate of title in his presence but that he had not notarized the signature at that time. When Bruder visited Mincieli's yard on August 29, 1988, Mincieli showed her the certificate of title, bearing Minkoff's unnotarized signature. Afterwards, Mincieli notarized Minkoff's signature, but dated his notarization as of August 26, 1988. He stated that he used this date to coincide with the date on a check written by Daniel Kaplan, who purchased the Subaru from him.

Bruder testified that, upon her review of the Subaru's title record with the Department of Motor Vehicles, she found a completed transfer of title stating that the Subaru had been purchased directly from Minkoff by Kaplan. Minkoff's signature appeared notarized by Mincieli as of August 26, 1988. Bruder, however, had seen the unnotarized certificate on August 29, 1988. Bruder further testified that she presented the results of her investigation to Assistant State Attorney Mark Horn. After consultation with Horn, she prepared a probable cause affidavit enumerating the four felony charges recommended by Horn. Once Horn obtained a capias, she proceeded to arrest Mincieli on May 3, 1989.

Mincieli presented the expert testimony of former City of Sunrise Police Chief Edward Patten. Chief Patten opined that no reasonably competent officer in Bruder's position would have sought a capias for any of the four felony offenses for which Mincieli was arrested. Bruder did not present any opposing expert testimony.

## DISCUSSION

*1. The jury's probable cause determination:*

Bruder first argues that she had probable cause "as a matter of law" to arrest Mincieli for the two felony charges related to the Subaru's certificate of title; i.e., the notary public violation by false acknowledgment and the fraudulent transfer of a motor vehicle

title.[3] Under the previously recited standard of review, however, a better statement of the issue is: Whether, viewing the evidence in the light most favorable to Mincieli, no reasonable jury could have concluded that Bruder lacked probable cause for Mincieli's arrest for these violations? Bruder would have the Court answer this question in the affirmative by relying on Mincieli's testimony that he back-dated the notarization of Minkoff's signature and Mincieli's acknowledgment that the Subaru transaction that actually took place was from Minkoff to Mincieli to Kaplan, even though the certificate showed a direct transfer from Minkoff to Kaplan.

The Court instructed the jury on probable cause as follows:

> In this regard, you are instructed that a law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he or she has reasonable trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. The existence of probable cause to arrest is based on *objective* standards.

As to the notary public violation, the Court instructed the jury that this crime requires the false or fraudulent acknowledgment of an instrument. As to the motor vehicle transfer violation, the Court instructed the jury that it is unlawful to make a false statement on a certificate of title application, or to otherwise commit a fraud in any such application.

■ The Court finds that the evidence, when viewed in the light most favorable to Mincieli, and drawing all inferences in his favor, supports the jury's explicit determination that Bruder lacked probable cause to arrest Mincieli for these violations. Viewing the evidence in such a light, a reasonable

jury could have concluded that the facts and circumstances within Bruder's knowledge would not have led a prudent officer to believe that Mincieli had committed the title-related offenses. Specifically, a reasonable jury could have concluded that Mincieli's back-dating of the signature notarization and his role in the direct transfer of title from Minkoff to Kaplan were insufficient to support a reasonable belief that Mincieli had committed these violations, absent fraudulent intent on the part of Mincieli. Accordingly, the Court rejects Bruder's request for entry of judgment as a matter of law on the basis that no reasonable jury could have concluded that Bruder lacked probable cause for Mincieli's arrest for these violations.[4]

### 2. Bruder's entitlement to qualified immunity:

■ Bruder next argues that she is entitled to qualified immunity from liability under 42 U.S.C. § 1983. Again, Bruder misstates the issue to be determined by the Court. "Qualified immunity is an affirmative defense from trial and not a defense to liability issues raised during trial." *Ansley v. Heinrich*, 925 F.2d 1339, 1348 (11th Cir. 1991).

■ "[Q]ualified immunity is a legal determination that must be made by the court and may be made either before trial, during trial, or after trial." *Stone v. Peacock*, 968 F.2d 1163, 1165–66 (11th Cir.1992). Because Bruder did not raise the defense of qualified immunity by way of a pre-trial motion, the Court did not have the opportunity to address the issue prior to trial. The Court denied Bruder's motion for judgment as a matter of law during trial. Therefore, the Court must address Bruder's qualified immunity defense, as a legal question, post-trial.[5]

---

3. In her motion, Bruder does not seek a similar finding of probable cause as to the charges of motor vehicle theft and dealing in stolen property. The Court, therefore, accepts the jury's finding of lack of probable cause as to these two charges.

4. Bruder also argues that the facts within her knowledge supported a finding of probable cause for violation of another provision of the notary statute; namely, the requirement that a signatory

must be in the presence of a notary at the time the signature is notarized. *Fla.Stat.* § 117.09(1) (1987). Bruder did not raise this issue at trial for consideration by the jury. Therefore, Bruder cannot complain that the jury's probable cause determination was unreasonable on this basis.

5. Pursuant to Bruder's request, the Court gave the jury a qualified immunity instruction based on the language contained in the Eleventh Circuit's Federal Claims Pattern Instruction Num-

■ In addressing Bruder's defense of qualified immunity, the Court follows the following two-step analysis developed by the Eleventh Circuit:

(1) Bruder must first prove that she was acting within the scope of her discretionary authority when she arrested Mincieli;

(2) Once Bruder has satisfied the burden of moving forward with the evidence, the burden shifts to Mincieli to show lack of good faith on Bruder's part. Mincieli can meet this burden by demonstrating that Bruder's actions violated clearly established constitutional law.

*Lowe v. Aldridge,* 958 F.2d 1565, 1570 (11th Cir.1992). Because Mincieli has not challenged the proposition that Bruder was acting within the scope of her discretionary authority as a police officer when she arrested him, the Court concludes that Bruder has satisfied the burden imposed by the first step of the analysis. The Court proceeds, therefore, to determine whether Mincieli has demonstrated that Bruder's actions in filing a probable cause affidavit, which resulted in the issuance of a capias and her subsequent arrest of Mincieli pursuant to the capias, violated clearly established constitutional law.

■ "Indubitably, an arrest without probable cause violates the Fourth Amendment and establishes a cause of action under section 1983." *Lowe,* 958 F.2d at 1570. The question that the Court must determine, however, is whether Bruder had "arguable probable cause" or whether "reasonable officers in the same circumstances and possessing the same knowledge as [Bruder] could have believed that probable cause existed." *Id.* (citing *Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir.1990)). "In other words, actual probable cause is not necessary for an arrest to be objectively reasonable." *Id.* As reflected in this statement, application of the doctrine of qualified immunity to situations involving probable cause determinations has resulted in the development of "a double standard of reasonableness—the constitutional standard already embodied in the Fourth Amendment and an even more generous standard that protects any officer who reasonably could have believed that his conduct was constitutionally reasonable." *Anderson v. Creighton,* 483 U.S. 635, 648, 107 S.Ct. 3034, 3044, 97 L.Ed.2d 523 (1987) (Stevens, J. dissenting). In *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the United States Supreme Court made this more generous standard, which had been established for suppression hearings in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), applicable to the issue of qualified immunity. Pursuant to *Malley,* "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, will the shield of immunity be lost." *Malley,* 475 U.S. at 344–45, 106 S.Ct. at 1098 (citing *Leon,* 468 U.S. at 923, 104 S.Ct. at 3420). The Court, therefore, must review Bruder's probable cause affidavit to determine if it is so lacking in indicia as to render Bruder's belief in the existence of probable cause unreasonable. The fact that Bruder presented her documentation to Assistant State Attorney Horn, and that Horn obtained a capias based on such documentation does not insulate her from this inquiry. *Malley,* 475 U.S. at 345–46, 106 S.Ct. at 1098–99.[6]

---

ber 2.1. A review of the case law indicates, however, that the Eleventh Circuit's present posture is "that the defense of qualified immunity should be decided by the court, and should not be submitted for decision by the jury." *Stone v. Peacock,* 968 F.2d 1163, 1166 (11th Cir.1992). Moreover, the jury's resolution of factual issues material to the qualified immunity defense, if any, should be accomplished without any mention of qualified immunity. *Ansley,* 925 F.2d at 1348. Where the jury decides the case on the merits rather than on qualified immunity, however, a court's instructions to the jury on qualified immunity may have no effect. *Stone,* 968 F.2d at 1166. Because the special interrogatory answered by the jury in this case did not mention qualified immunity and the jury found in favor of the plaintiff, the Court concludes that the jury decided the case on the merits rather than on qualified immunity.

**6.** Bruder has conceded, for purposes of this motion, that she had knowledge indicating that Mincieli might have obtained ownership of the Subaru found in his towing yard by virtue of the Florida towing lien law or through a trade-in deal with the Subaru's owner, Judie Minkoff, and that such knowledge would vitiate a finding of probable cause as to the theft-related charges.

**518**

According to Bruder's unrefuted testimony, when she filed her probable cause affidavit she had knowledge of Minkoff's back-dating of the notarization and of the discrepancy between the recorded "Minkoff–Kaplan" transaction and the actual "Minkoff–Mincieli–Kaplan" transaction. Indeed, Mincieli's testimony confirmed that he back-dated the notarization and that a direct sales transaction from Minkoff to Kaplan did not occur. The Court finds that Bruder's knowledge of the back-dated notarization constitutes sufficient indicia to support a reasonable belief on Bruder's part that Mincieli had committed the third degree felony of notary public violation by false acknowledgment. Similarly, the Court finds that Bruder's knowledge of the discrepancy between the actual sales transaction and the transaction evidenced by the title transfer, constitutes sufficient indicia to support a reasonable belief on Bruder's part that Mincieli had committed the third degree felony of fraudulent transfer of a motor vehicle title.

Mincieli argues that, absent specific fraudulent intent on his part, Bruder lacked even arguable probable cause to arrest him for the title-related violations. Although this consideration may apply to a determination of the existence of actual probable cause, the reasonableness standard for qualified immunity is less exacting. Where "reasonable competent persons could disagree on the interpretation of a statute," qualified immunity protects an arresting officer acting under one such reasonable interpretation. *Von Stein*, 904 F.2d at 579. In their briefs, the parties have cited conflicting state decisions regarding the requirement of specific intent for the third degree felony of fraudulent transfer of a motor vehicle title. *Compare, City of Sweetwater v. Zaldivar*, 559 So.2d 660, 661 (Fla. 3d DCA 1990) (intent to defraud not necessary); *State v. James*, 543 So.2d 288, 289 (Fla. 3d DCA 1989) (same), *with City of St. Petersburg v. Jewell*, 489 So.2d 78, 79 (Fla. 2d DCA 1986) (intent to defraud necessary); *State v. Copher*, 395 So.2d 635, 638 (Fla. 2d DCA 1981) (same). The existence of these conflicting interpretations regarding

the specific intent requirement for the motor vehicle transfer statute leads the Court to the conclusion that the law in this area was not clearly established at the time of Mincieli's arrest. Therefore, even assuming that Mincieli lacked specific intent to defraud anyone, Bruder had arguable probable cause to believe that Mincieli had violated the statute. *Von Stein*, 904 F.2d at 579–80 (Arguable probable cause existed where more than one reasonable interpretation of a statute was possible and the statute had never been subject to judicial interpretation.). Because she had arguable probable cause for at least one of the four charges included in the probable cause affidavit, Bruder's shield of immunity is not lost. *United States v. Saunders*, 476 F.2d 5, 7 (5th Cir.1973) ("Where an officer makes an arrest which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest.") Accordingly, Bruder is entitled to judgment as a matter of law.

*CONCLUSION*

Based on the foregoing considerations, it is hereby

ORDERED AND ADJUDGED that Defendant Audrey Bruder's renewed motion for judgment as a matter of law is GRANTED. It is further

ORDERED AND ADJUDGED that Bruder's alternative motion for judgment notwithstanding verdict is DENIED as moot.

Pursuant to *Fed.R.Civ.P.* 58, the Court shall enter its final judgment by separate order.

DONE AND ORDERED.

In light of Bruder's posture, the Court does not consider the issue of arguable probable cause as

to the charges of motor vehicle theft and dealing in stolen property.