915 F.2d 424
 Jesse J. SANCHEZ; Victor Torres; Robert Caro, Plaintiffs-Appellees,
v.
CITY OF SANTA ANA, Defendant-Appellant,
and
City of Santa Ana Police Department; Don Botts; Raymond C.
Davis; E.B. Hansen; Robert Stebbens; Norwood Williams;
Lee Drummond; Lawrence Pitzer; Michael Llewellyn; Dale
Sterzer; Gary Dixon; John Collins; John McDaniels;
Michael Lanners; William Bruns; John Dittus; Richard
Faust; John McClain, Defendants.
Jesse J. SANCHEZ; Victor Torres; Robert Caro, Plaintiffs-Appellees,
v.
CITY OF SANTA ANA, Defendant,
and
Robert Stebbens; Norwood Williams; Lee Drummond; Lawrence
Pitzer; Michael Llewellyn; Dale Sterzer; Gary Dixon;
John Collins; John McDaniels; Michael Lanners; William
Bruns; John Dittus; Richard Faust; John McClain,
Defendants-Appellants.
 Nos. 86-6386, 88-5827, 88-5855.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 4, 1989.
Opinion Filed July 11, 1990.
Opinion Withdrawn July 16, 1990.
Decided Sept. 25, 1990.
 
 Charles Matheis, Jr., Beam & Brobeck, Santa Ana, Cal., for defendants-appellants.
 Meir J. Westreich, Glendale, Cal., for plaintiffs-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN, Chief Judge, SCHROEDER and O'SCANNLAIN, Circuit Judges.
 GOODWIN, Chief Judge:
 
 
 1
 The City of Santa Ana appeals the district court's summary judgment in favor of former city police officer Jesse J. Sanchez on his claim under 42 U.S.C. Sec. 1983 that the City violated his due process rights in removing his merit pay. The City also appeals the jury's damage award of $400,000 in lost wages and $500,000 for emotional distress.[1] We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm the summary judgment and affirm in part and vacate in part the damage award.
 
 
 2
 The City of Santa Ana Police Department hired Sanchez in late 1975 pursuant to a program to recruit Spanish-speaking officers. His salary was initially set at step C, the base salary for police officers hired from other police departments as lateral transfers. By April 1, 1978, Sanchez had progressed to merit step E, the highest salary step, which is awarded on the basis of meritorious performance.
 
 
 3
 In February 1979, defendant Sergeant Collins, Sanchez's supervisor, prepared an annual performance review recommending that Sanchez's merit step E be removed because he was performing "below job standards." Excerpts of Record [ER] at 701-703. No action was taken at that time.
 
 
 4
 On March 14, 1979, defendant Captain Hansen submitted a memorandum to Chief of Police Davis recommending that Sanchez's merit step D be removed because of two disciplinary suspension recommendations from Sanchez's supervisors, Sergeant Collins and Lieutenant Williams. At the conclusion of the recommendation, Captain Hansen wrote: "This action should not be considered disciplinary. It is intended as an action based on substandard job performance." ER at 910-11.
 
 
 5
 On March 15, 1979, Sanchez left work during roll call, claiming emotional illness. Later that same day, his merit step E was formally removed, retroactive to March 1, 1979.
 
 
 6
 On March 26, 1979, Chief Davis approved in writing the removal of Sanchez's merit step D, effective April 1, 1979.
 
 
 7
 In a March 30, 1979 memorandum to Chief Davis, Sanchez indicated that he wished to contest the removal of his merit pay, and requested a written statement of the charges against him. Captain Hansen responded to Sanchez's memorandum, stating that the removal of his merit pay was not based on any specific charges against him other than a failure to perform at a level justifying merit pay. He further advised Sanchez that he could challenge the removal by arranging for an interview with Chief Davis or by relying on his written memorandum. It is undisputed that Chief Davis never responded to Sanchez's memorandum.
 
 
 8
 In an April 13, 1979 memorandum to Captain Hansen, Sanchez reiterated his request for a statement of the charges upon which the removal of his merit pay was based, because without such a statement he did "not know how to respond to the pay reductions in the grievance procedure." ER at 927. Captain Hansen again informed Sanchez that the removal of his merit pay was based solely upon his substandard performance, that he should submit a written grievance to, or request an interview with, Chief Davis, and that he could obtain further clarification of the grievance procedure from Lieutenant Jordan.
 
 
 9
 In an April 25, 1979 memorandum to Lieutenant Jordan, Sanchez requested an explanation of the procedure the department had followed in removing merit pay and of the grievance procedure to challenge its removal. He indicated that he wished to pursue the grievance procedure, but first wanted to understand the complete procedure. Lieutenant Jordan informed him that Santa Ana City Council Resolution 58-281 covered the procedure the department had used in removing Sanchez's merit pay and that Section 10.77 of the Santa Ana Police Department's Rules and Regulations covered the grievance procedure to challenge its removal. Resolution 58-281 provides that an officer's merit pay may be removed upon the recommendation of the head of the police department and the approval of the City Manager. Section 10.77 permits an employee to present grievances concerning adverse personnel action through channels up to and including the Chief of Police. Lieutenant Jordan's letter made no reference to the City's grievance procedure, Santa Ana City Charter Section 1008, which grants the right to a hearing before the Santa Ana Personnel Board.
 
 
 10
 Beginning on May 6, 1989, Sanchez took a four-month medical leave of absence. By letter dated September 6, 1979, Sanchez advised the City that his doctor had conditionally released him to return to work. He requested information concerning his new work assignment, which the City provided the same day.
 
 
 11
 By letter dated September 10, 1979, Sanchez alleged that the removal of his merit pay was a demotion and a continuing pattern of discrimination which had caused him to suffer a stress reaction. He indicated that he would return to work only if his merit pay were restored.
 
 
 12
 Lieutenant Jordan phoned Sanchez on behalf of the City and denied his request for immediate restoration of his merit pay. Sanchez thereafter submitted a letter of resignation effective September 10, 1979.
 
 
 13
 Sanchez and two other former police officers filed in federal district court a complaint for damages and injunctive relief against the City, Chief Davis, and other named members of the department. The complaint alleged that the City had removed Sanchez's merit pay without due process of law, that Sanchez had been constructively discharged from his job, and that, as a result of emotional distress, he suffered from a work-related disability.
 
 
 14
 On February 7, 1983, the defendants filed a motion in limine, seeking in part a declaration that Santa Ana City Charter Section 1008, as amended, (the City's grievance procedure) was constitutional. Prior to its amendment in June 1978, Section 1008 granted to City employees whose pay had been reduced the right to a written statement of the charges leading to the pay reduction and the right to a hearing before the Santa Ana Personnel Board. The June 1978 amendment removed merit pay reductions from the coverage of Section 1008.
 
 
 15
 Sanchez responded by moving for summary judgment. He argued that the amended Section 1008 could not be applied retroactively to him because he had begun receiving merit pay prior to the effective date of the amendment, and that he had a property interest in his merit pay which could not be taken away without due process.
 
 
 16
 On June 3, 1983, the district court granted partial summary judgment in favor of Sanchez and against the City and Chief Davis on Sanchez's due process claim. The court concluded that the City had denied Sanchez due process in removing his merit pay, and that the denial of due process was a proper claim under 42 U.S.C. Sec. 1983. The court subsequently exonerated Chief Davis of personal liability and reserved for trial the issue of the scope, nature and amount of damages against the City.
 
 
 17
 Following a trial on the issue of damages, the jury determined that the due process violation constituted a constructive discharge, and awarded Sanchez $400,000 in lost income and $500,000 for emotional distress. After the City's post-trial motions were denied, the City brought this appeal.
 
 I. The Summary Judgment In Favor of Sanchez
 
 18
 The City advances four assignments of error: (a) Sanchez did not have a constitutionally protected property interest in his merit pay; (b) the grievance procedure available to Sanchez satisfied due process; (c) Sanchez waived his right to challenge the grievance procedure; and (d) Sanchez's due process claim is barred by Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). We reject these contentions.
 
 
 19
 (a) Property interest in merit pay
 
 
 20
 The City argues that Sanchez had no property interest in his merit pay. "The ... due process guarantees of the fourteenth amendment apply only when a constitutionally protected liberty or property interest is at stake." Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir.1989). Property interests are not created by the Constitution; instead, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In order to have a property interest in a benefit, a person must demonstrate that he or she has a legitimate claim of entitlement to it, not merely a unilateral expectation. Id.
 
 
 21
 Sanchez correctly asserts that prior to its amendment in June 1978, Santa Ana City Charter Section 1008 (hereinafter "old Section 1008"), the grievance procedure in effect at the time Sanchez began receiving merit pay, created a constitutionally protected property interest in merit pay.
 
 
 22
 A governing body does not create a property interest in a benefit merely by providing a particular procedure for the removal of that benefit. See McGraw v. Huntington Beach, 882 F.2d 384, 389 (9th Cir.1989) (property cannot be defined by the procedures for its deprivation). But old Section 1008 did more than create an entitlement to an administrative appeal where a city employee's merit pay is removed. Old Section 1008 treated a reduction in pay as a demotion, and, by providing that an employee may be demoted for certain specified reasons, implicitly restricted the City's authority to demote an employee to the specified reasons.[2] See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39, 105 S.Ct. 1487, 1491-92, 84 L.Ed.2d 494 (1985) (classified civil service employee had property interest in continued employment because a state statute provided that such employees may not be dismissed except for certain specified reasons); cf. Hogue v. Clinton, 791 F.2d 1318, 1324 (8th Cir.) (discharged employee had no property interest in employment where grievance procedure merely provided an avenue to appeal the discharge and did not guide or restrict the employer's decision to terminate), cert. denied, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 704 (1986).
 
 
 23
 The City argues that Sanchez did not have a property interest in his merit pay at the time it was taken away because the removal of merit pay had been excluded from Section 1008's grievance procedure pursuant to the June 1978 amendment. This amendment, however, took effect after Sanchez had progressed to merit step E. As the City acknowledged at oral argument, under old Section 1008, once Sanchez began receiving merit pay, it would have continued automatically absent affirmative action on the part of the City to take it away. Sanchez thus had a vested property right to merit pay at the time he began receiving merit pay under old Section 1008. The City could not arbitrarily take away Sanchez's right to continued receipt of merit pay simply by amending Section 1008. See Olson v. Cory, 27 Cal.3d 532, 636 P.2d 532, 178 Cal.Rptr. 568 (1980) (declaring unconstitutional the state's attempt to limit certain cost-of-living increases in judges' salaries by amending a state compensation system; the state was required to pay judges entering office prior to the amendment at the then-mandated salary level). The cases teach that Sanchez had a constitutionally protected property interest in his merit pay prior to the amendment of Section 1008.[3]
 
 
 24
 (b) Adequacy of the City's procedure
 
 
 25
 The City next contends that, even if Sanchez had a property interest in his merit pay, the procedure the City followed in removing his merit pay satisfied federal due process. The district court correctly held that the procedures the City followed did not satisfy due process.
 
 
 26
 "Whether deprivation of a property right implicates a due process right to a hearing is a matter of federal constitutional law." Ostlund v. Bobb, 825 F.2d 1371, 1373 (9th Cir.1987), cert. denied, 486 U.S. 1033, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988). Due process generally requires " 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.' "[4] Loudermill, 470 U.S. at 542, 105 S.Ct. at 1493 (quoting Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)) (emphasis in original).
 
 
 27
 Sanchez does not contend, nor must he contend, that he should have been given a pre-removal hearing. He was entitled to an administrative appeal, or a post-removal hearing, to challenge the final decision to eliminate his merit pay. He received no hearing or an opportunity to be heard at any time.
 
 
 28
 It is undisputed that Sanchez was entitled to an administrative appeal under California law. Section 3304(b) of the state Bill of Rights Act provides that no punitive action may be taken against a police officer without providing the officer with an opportunity for an administrative appeal. Baggett v. Gates, 32 Cal.3d 128, 141, 649 P.2d 874, 881, 185 Cal.Rptr. 232, 239 (1982). Section 3303 defines "punitive action" to include a reduction in salary. Id.
 
 
 29
 Because Sanchez was never given an opportunity for a hearing of any kind to contest the removal of his merit pay,[5] his property interest was taken without due process.
 
 
 30
 (c) Waiver
 
 
 31
 The City next argues that Sanchez waived his right to challenge the grievance procedure on the ground that Sanchez never submitted a written memorandum to or made an appointment with Chief Davis, despite Captain Hansen's written instructions that this was the first step in the grievance procedure. The City further argues that Sanchez's March 30, 1979 memorandum to Chief Davis and April 25, 1979 memorandum to Lieutenant Jordan merely evidence an attempt to obtain information prior to instituting the grievance procedure, not an attempt to institute the grievance procedure. This argument also fails to excuse the denial of any kind of procedural review.
 
 
 32
 "A waiver of a constitutional right is 'not to be implied and is not lightly to be found.' " Ostlund, 825 F.2d at 1373 (quoting United States v. Provencio, 554 F.2d 361, 363 (9th Cir.1977)). It must be knowing and voluntary. Id.
 
 
 33
 The facts do not support the City's contention that Sanchez waived his right to a hearing. City Charter Section 1008, the City's grievance procedure, provides that a City employee who has suffered a pay reduction is entitled to a written statement of the charges leading to the pay reduction. In accordance with Section 1008, Sanchez attempted to invoke the grievance procedure by requesting a written statement of the charges against him in his March 31, 1979 memorandum to Chief Davis, to which Chief Davis never responded. Not surprisingly, his subsequent memos to Captain Hansen and Lieutenant Jordan sought to clarify the grievance procedure after Chief Davis failed to respond to Sanchez's initial memorandum invoking the grievance procedure. Sanchez has not waived his right to challenge the procedure.
 
 
 34
 (d) Parratt v. Taylor
 
 
 35
 We also reject the City's argument that Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), bars Sanchez's due process claim. Because Sanchez sought only a post-deprivation hearing and it was denied, Parratt, which addresses when pre-removal hearings are required, is plainly inapplicable.
 
 
 36
 The City argues for the first time in its reply brief that Sanchez's Sec. 1983 claim against the City must fail because Sanchez did not establish that the City's policy makers acted to deprive him of due process. As a general rule, an appellant may not raise an argument for the first time in a reply brief. See Northwood Acceptance Corp. v. Lynnwood Equipment, 841 F.2d 918, 924 (9th Cir.1988). The City offers no justification for departure from this rule, and we therefore decline to address its argument.
 
 II. The Damage Award
 
 37
 The City challenges the jury's verdict granting Sanchez $400,000 in lost income and $500,000 for emotional distress on the following grounds: (a) the City's single act of removing Sanchez's merit pay cannot a constitute constructive discharge as a matter of law; (b) damages for emotional distress were barred by Sanchez's state workers' compensation award; and (c) it was prejudicial error for the district court to refuse to instruct the jury that a directed verdict had been entered in the City's favor on all of Sanchez's other claims. We affirm the damage award for lost income but vacate the award for emotional distress.
 
 
 38
 (a) Constructive discharge
 
 
 39
 The City contends that the removal of Sanchez's merit pay, standing alone, is insufficient as a matter of law to support a finding of constructive discharge because a single, isolated incident of employment discrimination is insufficient to establish constructive discharge. We reject this contention.
 
 
 40
 An employee who resigns, as Sanchez did, cannot secure backpay unless his employer constructively discharged him. Satterwhite v. Smith, 744 F.2d 1380, 1381 n. 1 (9th Cir.1984). "A constructive discharge occurs when, looking at the totality of the circumstances, 'a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions.' " Watson v. Nationwide Ins. Co., 823 F.2d 360, 361 (9th Cir.1987) (quoting Satterwhite, 744 F.2d at 1381).
 
 
 41
 Whether working conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question for the jury. Thomas v. Douglas, 877 F.2d 1428, 1434 (9th Cir.1989). In general, however, a single isolated incident is insufficient as a matter of law to support a finding of constructive discharge. Watson, 823 F.2d at 361. Thus, a plaintiff alleging a constructive discharge must show some " 'aggravating factors,' such as a 'continuous pattern of discriminatory treatment.' " Satterwhite, 744 F.2d at 1382 (quoting Clark v. Marsh, 665 F.2d 1168, 1174 (D.C.Cir.1981)).
 
 
 42
 The removal of Sanchez's merit pay coupled with the attending aggravating factors in the record permitted a trier of fact to conclude that a reasonable person would have felt compelled to quit. The removal of Sanchez's merit pay is more properly viewed as two discrete incidents. Sanchez lost his merit step E pursuant to a negative evaluation prepared by Sergeant Collins, Sanchez's immediate supervisor. He lost his merit pay step D pursuant to Captain Hansen's recommendation to Chief Davis.
 
 
 43
 Moreover, significant aggravating factors were present. Sanchez lost his merit pay step E on the same day that he left work suffering from a stress reaction. His merit pay step D was removed while he was on an approved medical leave of absence. Most significantly, Sanchez's repeated attempts to invoke the grievance procedure were rebuffed.
 
 
 44
 (b) The state worker's compensation award
 
 
 45
 The City contends that Sanchez's claim in federal court for emotional distress is barred under res judicata principles by his state workers' compensation award. On this point the City prevails.
 
 
 46
 Sanchez had previously filed two claims with the California Workers' Compensation Appeals Board for emotional injuries arising out of the loss of his merit pay. Pursuant to the parties' stipulation, the appeals board found that Sanchez's stress-related injuries caused a permanent disability of 30% and awarded him $8,662.50 for the period between the City's removal of Sanchez's merit pay in March 1979 and Sanchez's medical leave of absence in May 1979. The appeals board further determined that it lacked the authority to award pay during Sanchez's leave of absence and that his resignation on September 10, 1979 precluded his claim for entitlement to further benefits.
 
 
 47
 Preliminarily, we reject Sanchez's contention that the City has waived its right to assert res judicata. Res judicata is an affirmative defense and is ordinarily waived if not specially pleaded. Fed.R.Civ.P. 8(c); Harbeson v. Parke Davis, Inc., 746 F.2d 517, 520 (9th Cir.1984). "[A] preclusion defense that arises after the pleadings have been filed can be raised only by a motion for leave to file a supplemental answer under [Federal Rule of Civil Procedure] 15(d)." Id. We liberally construe such attempts to raise the defense as motions for leave to file a supplemental answer. Id.
 
 
 48
 The City could not have raised a preclusion defense in its August 14, 1980 answer because Sanchez did not receive the compensation award until November 12, 1981. The City raised the issue in its "Brief re. Allowable Damages" in October 1985. While considerable time had passed since the date of the award, the City did raise the issue prior to the trial on damages, thus giving Sanchez " 'notice of the plea of estoppel and a chance to argue ... why the imposition of an estoppel would be inappropriate.' " Id. (quoting Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971)). We therefore hold that the City has not waived its right to assert preclusion of that claim.
 
 
 49
 Whether Sanchez's compensation award for emotional injuries bars under res judicata principles his section 1983 claim for damages for emotional distress is answered by state law. See Eilrich v. Remas, 839 F.2d 630, 632 (9th Cir.), cert. denied, 488 U.S. 819, 109 S.Ct. 60, 102 L.Ed.2d 38 (1988).
 
 
 50
 California law provides that if an employee's injuries are compensable under the Workers' Compensation Act, the benefits provided thereunder constitute the exclusive remedy against the employer. See Cal.Labor Code Sec. 3601; Hollywood Refrigeration Sales Co., Inc. v. Superior Court, 164 Cal.App.3d 754, 757, 210 Cal.Rptr. 619, 620 (1985). Here, Sanchez has already recovered damages under the workers' compensation system for his emotional injuries. We therefore vacate the jury's damage award of $500,000 for emotional distress.[6]
 
 
 51
 (c) Directed verdict
 
 
 52
 The City contends that the district court erred by not instructing the jury that a directed verdict had been entered in the City's favor on all of Sanchez's claims except for the due process violation. This error was prejudicial, the City argues, because by failing to indicate that a directed verdict had been entered in the City's favor, the district court implicitly "gave the impression that it was finding against the City regarding the claims alleged over the 39 days [of trial]." Appellee's Brief at 18. We find no error.
 
 
 53
 The district court has wide latitude in tailoring jury instructions. Thorsted v. Kelly, 858 F.2d 571, 573 (9th Cir.1988). We view jury instructions as a whole, and examine them to determine whether they "fairly and adequately covered the issues presented, correctly stated the law, and were not misleading." Id. An error in instructing the jury does not require reversal if it is more probably than not harmless. Course v. A.H. Robins Co. Inc., 764 F.2d 1329, 1337 (9th Cir.), modified, 773 F.2d 1049 (9th Cir.1985).
 
 
 54
 The district court had no duty to inform the jury that a directed verdict had been entered in the City's favor on counts that were not being submitted. The only issue before the jury was the scope, nature, and amount of damages on Sanchez's Sec. 1983 due process claim; liability had already been fixed by the district court's earlier partial summary judgment order. The district court permitted Sanchez's counsel to read the order granting partial summary judgment, thus focusing the jury's attention on the issue of damages on the due process claim. Considering the jury instructions as a whole, we conclude that the district court did not commit prejudicial error in failing to inform the jury that a directed verdict had been entered on claims not properly before the jury.[7]
 
 
 55
 We therefore affirm the summary judgment on Sanchez's due process claim. We affirm the jury's damage award for lost income. We vacate the damage award for emotional distress. Neither party is entitled to costs or attorney fees on appeal.
 
 
 56
 AFFIRMED IN PART; VACATED IN PART.
 
 
 
 [1]
 This opinion addresses the City's appeal from the summary judgment and damage award in favor of Sanchez. The appeal of Sanchez and the other two former police officers involved in this suit is addressed in Sanchez v. City of Santa Ana, Nos. 85-6504, 86-6226, 87-5614, 88-5853, slip op. 7701 (9th Cir. July 11, 1990)
 
 
 [2]
 Old Section 1008 provided in relevant part:
 "Each or any of these actions relating to suspension, demotion, or dismissal may be taken by the officer having power of appointment to the position on the grounds of incompetency, inefficiency, dishonesty, misconduct, insubordination, failure to observe department or City rules or the rules and regulations as provided in this Article, or failure to cooperate reasonably with his superiors or fellow employees....
 A reduction in pay shall be treated as a demotion under this Section...."
 
 
 [3]
 The City's reliance on Veit v. Heckler, 746 F.2d 508 (9th Cir.1984), is misplaced. In Veit, we held that a federal civil service employee did not have a property interest in receiving a merit pay increase. Id. at 511. Here, in contrast, Sanchez had been receiving merit pay for nearly one year and, short of affirmative action on the City's part, would have continued to receive it
 
 
 [4]
 Two well-established exceptions exist: (1) where the property deprivation is the result of random and unauthorized conduct by a state employee such that meaningful predeprivation process is not possible; or (2) where protection of the public interest requires an immediate seizure of property without a hearing. See Sorrano's Gasco, 874 F.2d at 1317-18
 
 
 [5]
 Because Sanchez does not contend that he was entitled to a hearing prior to the removal of his merit pay, we do not reach the abstract issue of whether Sanchez was entitled to a pre-removal hearing
 
 
 [6]
 The City also contends that there was insufficient evidence to establish that the jury's award of damages for emotional distress stemmed from the due process violation. Because we vacate the award of damages for emotional distress on other grounds, it is unnecessary to address this issue
 
 
 [7]
 The City similarly argues that the district court gave the impression that the plaintiffs' claims had survived by allowing Caro and Torres, Sanchez's co-plaintiffs on other discrimination claims, to sit at the counsel table with Sanchez. The district court, however, clearly informed the jury that the only issue before it was the damages stemming from the procedural due process violation