**August C. WUNDERLY, Plaintiff,**

v.

**S.C. JOHNSON & SON, INC., Defendant.**

**Civ. No. 92–1181–MA.**

United States District Court,
D. Oregon.

June 3, 1993.

Diana Craine, Phylis Myles, Craine & Love, Lake Oswego, OR, for plaintiff.

Corbett Gordon, David Riewald, Bullard, Korshoj, Smith & Jernstedt, Portland, OR, for defendant.

## OPINION

MARSH, District Judge.

Plaintiff filed this action against his former employer alleging that he was constructively discharged on the basis of his age and because he protested perceived age discrimination. Plaintiff asserts two claims for relief: (1) violation of the Age Discrimination Act, 29 U.S.C. § 623(a)(1), by virtue of his constructive discharge; and (2) common law wrongful constructive discharge on the basis of retaliatory action taken against him following his complaints. Defendant now moves for summary judgment against both claims on the ground that plaintiff cannot establish a prima facie case because he was never "discharged," and on the basis that plaintiff

has failed to come forward with any evidence of discriminatory intent to establish pretext and create a triable issue of fact.

## STANDARDS

Summary judgment is appropriate if the court finds that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). There is no genuine issue of material fact where the nonmoving party fails "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir.1989).

 All reasonable doubts as to the existence of genuine issues of fact must be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). The inferences drawn from underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences can be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir.1981).

## BACKGROUND

Plaintiff began working in 1967 at an entry level sales position in defendant's Portland, Oregon, consumer products division. In 1975 plaintiff was promoted to the position of the Portland District Sales Manager. In 1985 the company underwent a reorganization which divided consumer products into two separate divisions: personal products and household products with a district sales manager for each division within a region. During the 1985 reorganization, plaintiff was promoted to the position of District Sales Manager for household products (DSM–HH).

Defendant underwent another reorganization of its sales force in 1988 in which Regional Managers (a position two-levels above the District Sales Manager) were replaced by District Sales Managers under the new name of Regional Market Managers (RMM). During the 1988 reorganization plaintiff was promoted to the position of an RMM for household products (RMM–HH). In addition, another employee, Paul Fiascone, was transferred from Denver to the Seattle/Portland region to be a Key Account Manager (KAM). Plaintiff was Fiascone's immediate supervisor.

In 1989, the RMM for personal products position became available due to the untimely death of the person holding the position. Plaintiff requested and received a lateral transfer to the RMM–PP Seattle/Portland division. Plaintiff's former position as the RMM–HH was awarded to Fiascone.

In 1991 defendant reorganized its sales force for a third time, consolidating the RMM–HH and RMM–PP positions into a single RMM and re-drawing some district boundaries. Under the reorganization plan, 62 RMMs nationwide were reduced to 37 positions. To accomplish this reduction in force, the company delegated its decision-making authority to a 3–person committee which consisted of Gary Raley, the National Sales Manager for household products, Kim Spafford, National Sales Manager for personal products, and James Frederick, Director of Human Resources.

The Committee began the reduction process by devising the following three-level criteria (listed in rank order of importance) to follow in making its decisions: (1) performance evaluations for the prior 3 years; (2) ratings on a 1990 evaluation tool known as the Management Succession and Development Plan [1]; and (3) present geographic location and history of relocation. Next, the Committee decided against selecting the first 37 top ranked existing employees out of the entire pool of 62 to avoid the expense and potential disruption that may have been

---

1. The MS & D rating, as used by defendant, was really a further refinement of the first criteria since only those employees in the top 10% of the sales force, as determined by their performance appraisals ratings, received MS & D evaluations.

According to defendant, Fiascone received one of the highest possible ratings on the MS & D, while plaintiff did not receive an MS & D rating since his performance evaluations did not place him within the top 10% of the sales force.

caused by a mass relocation.[2] Instead, the Committee opted to make its selections based upon "head-to-head" match-ups amongst small groups of employees already located within the area. Thus, when filling the RMM position for the Seattle/Portland area, the applicant pool consisted solely of plaintiff and Fiascone.

According to the Committee members, when they compared the performance appraisals for the last three years of plaintiff against Fiascone, Fiascone had a "clear advantage" and deserved the new RMM position solely upon the first criterion. Fiascone was rated "CE" for "consistently excels" by plaintiff and another supervisor R.J. Saltiel for the years 1988–1989 and 1989–1990 and received an MR for "meets requirements" from M.P. Flynn for 1987–88. Plaintiff was rated MR+ for each performance appraisal given between 1987 through 1990.[3] Plaintiff agrees that, up until 1991, he "received steady promotions and above average reviews."

According to the Committee members, it selected Fiascone based solely upon its consideration of the first criterion (past performance appraisals). Each Committee member specifically denies that age played any part in any of its decisions. At the time of the Committee's selection process, Fiascone was 28 years old and plaintiff was 54 years old.

Prior to instituting the plan, the company decided that it would not terminate any employee displaced by the reorganization, nor would it reduce the current salary of any displaced employee offered a demotion. Hence, each employee not selected by the Committee for an RMM position was offered reassignment to another position in the sales force or a separation package, the terms of which varied depending upon whether the employee was eligible for retirement.[4]

Because plaintiff was not selected for the Seattle/Portland RMM, he was offered the option of accepting a demotion to the Portland Retail Training Manager (RM) position or taking the retirement separation package.[5] Plaintiff was notified of his two options on May 7, 1991 in a meeting with Spafford. Defendant contends that after plaintiff "expressed dissatisfaction" with the proposed RM position, Spafford asked plaintiff if he would be interested in the KAM position in Portland. Thereafter, plaintiff pursued the possibility of early retirement with James Frederick, the Human Resources Manager. Following his initial meeting with Spafford, defendant claims that Frederick offered plaintiff two additional options: an RMM position which had just opened up in Des Moines, Iowa, and a second RMM position for a newly created district in San Antonio, Texas. Plaintiff admits that he heard about the possibility of the Portland KAM position and the Des Moines RMM position, but claims that these jobs were never actually offered to him. Defendant contends plaintiff never expressed any interest in the KAM or Des Moines position, so the options were not pursued. Plaintiff denies that anyone ever mentioned the San Antonio RMM position to him.

According to plaintiff, at some point in mid to late 1990, he attended a meeting in Racine, Wisconsin to discuss early retirement options. During this meeting he learned that he could receive a more favorable benefit package if he retired during the 1991 reorganization. At this point, plaintiff "felt that

---

**2.** During 1990, the company had a policy of budgeting $65,000 to cover moving expenses for relocating any member of the sales force if he or she owned a home.

**3.** Plaintiff's performance appraisal for 1989–90 was prepared by his supervisor T.H. Cobb who replaced Ron Collins mid-year. Plaintiff's 1988–89 appraisal was prepared by R.J. Saltiel. I was unable to find a copy of plaintiff's performance appraisal for 1987–88 in either parties' submissions.

**4.** Displaced employees were eligible for retirement if they were at least 50 years old and had completed at least 10 years of services with the company and had been displaced from the sales force or expressed a prior interest in retirement.

**5.** Plaintiff contends that the Retail Training Manager (RM) position was "two levels" below that of an RMM. According to defendant, the RMM is a level 36 while the RM is a level 34—although it is two "levels" lower, both an RM and a KAM fall directly below an RMM in the organizational structure.

this was his only option and that the company had fired him." In late June of 1991, plaintiff notified Frederick of his decision to accept the retirement package.[6] Plaintiff's retirement was effective June 28, 1991. Thereafter, plaintiff filed a charge of age discrimination and the EEOC issued a determination and a right to sue letter on June 30, 1992.

## DISCUSSION

The Age Discrimination in Employment Act (ADEA), 29 U.S.C. 621, *et seq.*, provides that it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privilege of employment because of such individual's age." § 623(a)(1). Protection under the act extends to all individuals who are at least 40 years old. § 631(a).

A plaintiff alleging discrimination under the ADEA may rely upon two alternative theories: disparate treatment or disparate impact. *Rose v. Wells Fargo*, 902 F.2d 1417, 1421 (9th Cir.1990). In this case, plaintiff relies upon the disparate treatment theory. Therefore, to establish a *prima facie* case of age discrimination, plaintiff must produce enough evidence to permit the trier of fact to infer that: (1) he is a member of the protected class; (2) he was performing his job in a satisfactory manner; (3) he was discharged; and (4) he was replaced by a substantially younger employee with equal or inferior qualifications. *Id.* If there is a general reduction in workforce, the plaintiff need not necessarily show that he was directly "replaced" by a younger employee, but must instead show a continuing need for his skills and must show "through circumstantial, statistical or direct evidence that the discharge occurred under circumstances giving rise to an inference of discrimination." *Id.*[7] The initial burden imposed upon the plaintiff is not meant to be "onerous" and need only "suggest," that the challenged decision was

based on age. *Id.*, at n. 1, *citing Diaz v. American Tel. & Tel.*, 752 F.2d 1356, 1361 (9th Cir.1985).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to produce evidence that it had legitimate non-discriminatory reasons for its decision. *Id.* If the employer satisfies this burden, the burden of production shifts back to the plaintiff to establish that the defendant's proffered reasons are pretextual. *Id.* Although the burden of production shifts, the burden of persuasion remains with the plaintiff at all times. *Id.*, *citing Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

In this case, there is no dispute that plaintiff is a member of the protected class, nor is there any dispute that plaintiff was performing his job in a satisfactory manner and was qualified for the position awarded to a younger employee, Fiascone. However, defendant contends that plaintiff was never "discharged" because he was offered several alternative positions—demotions within the district without a pay reduction, promotions in other districts and early retirement. Because factual disputes exist regarding whether plaintiff was ever actually offered the Portland KAM, Des Moines RMM or San Antonio RMM positions, for the purposes of this motion, I have assumed that plaintiff's allegations are true and that he was given only two options: (1) the Portland RM position—officially a "demotion," which would have placed him directly below Fiascone in the organizational ladder; and (2) the retirement separation package.

The doctrine of "constructive discharge" is well established in federal employment law as a means of recognizing that there may be instances in which an employer doesn't actually terminate an employee but, instead, tells the employee to "resign or be

---

6. The "package" consisted of $155,312 in severance pay (reflecting two years' salary), outplacement assistance, and medical and dental benefits for life.

7. When an employer reduces its workforce for economic reasons, it has no general duty to relocate or transfer displaced employees. *Rose*, 902 F.2d at 1422. However, if the employer voluntarily assumes such a task, it must be carried out in a non-discriminatory fashion.

fired," or makes the conditions of employment so intolerable or discriminatory so as to effectively force the employee to resign. *See e.g. Sanchez v. City of Santa Ana,* 915 F.2d 424, 431 (9th Cir.1990). Whether a constructive discharge exists must be examined under the totality of the circumstances and the test applied is an objective one, that is whether a reasonable person in plaintiff's position would have felt forced to resign. *Id.* Generally, whether working conditions have risen to an "intolerable level" is a factual question for the jury. *Id.* However, a single "isolated" incident may fail as a matter of law to support a claim of constructive discharge. *Id.; see also Watson v. Nationwide Ins. Co.,* 823 F.2d 360, 361 (9th Cir.1987); and *Skagen v. Sears, Roebuck & Co.,* 910 F.2d 1498, 1501 (7th Cir.1990) (rejecting argument that summary judgment is never appropriate in age discrimination cases). Generally, courts look for evidence of either "aggravating circumstances" or a "continuous pattern of discriminatory treatment," to support a constructive discharge claim. *See e.g., Sanchez,* 915 F.2d at 431 (employer removed plaintiff's merit pay, gave plaintiff negative evaluations and rebuffed plaintiff's repeated attempts to invoke the City's grievance procedure); and *Watson,* 823 F.2d at 360–361 (following interracial marriage plaintiff was written up for a violation when other similarly situated employees were not, received negative performance reviews for first time and supervisor called her a derogatory name and threatened her with a demotion if she did not resign).

The parties were unable to cite, nor could I find any cases from the Ninth Circuit to consider constructive discharge in the context of a reduction in workforce along with an offer of early retirement or demotion. However, several other circuits have considered circumstances closely analogous to the facts in this case and determined that the ADEA claim failed as a matter of law because the plaintiff was not "discharged." For example, in *McCann v. Litton Systems, Inc.,* 986 F.2d 946 (5th Cir.1993), plaintiff had been employed by defendant as an engineer for over 16 years and was, by all accounts, an "excellent" employee. The defendant underwent a company-wide reduction in force and plaintiff was given the option of accepting a retirement package or a transfer with a 12% pay cut. Plaintiff felt the transfer option was an "insult," since he would be working for a much younger man, the proffered position was new and ill-defined and he would lose his secretary and subordinates. Plaintiff filed an age discrimination claim and then retired. Following a jury verdict for the plaintiff, the district court denied defendant's motion for a JNOV. The Fifth Circuit reversed, finding that the evidence failed to support a finding of constructive discharge in the absence of specific "aggravating factors" surrounding the demotion. Specifically, the court distinguished the facts from several prior decisions and pointed to the fact that the plaintiff produced no evidence that he was personally humiliated by the proffered demotion, he did not have to train his younger successor to the newly organized division and because of the absence of any evidence to show that plaintiff was "coerced" into accepting early retirement. The court further noted that the defendant had made every effort to *keep* the plaintiff on the payroll, attempting to find other positions in other areas of the company, so that the demotion was hardly a "harbinger of dismissal." *Id.,* at 952–53.

I found several cases which provide some guidance as to the types of aggravating circumstances which might at least create a jury question on the issue of whether a proffered demotion or transfer constitutes a constructive discharge. For example, in *Williams v. Caterpillar Tractor Co.,* 770 F.2d 47 (6th Cir.1985), the court denied an employer's motion to set aside a jury verdict finding sufficient evidence where the plaintiff was offered an 8–level demotion to a position involving heavy lifting, had no prior record of warnings or reprimands, and that at least one of the proffered bases for the demotion was pretextual. *See also Stamey v. Southern Bell Tel. & Tel. Co.,* 859 F.2d 855, 860 (11th Cir.), *reh'g denied,* 867 F.2d 1431, *cert. denied,* 490 U.S. 1116, 109 S.Ct. 3178, 104 L.Ed.2d 1040 (1989) (company hired replacement who was at plaintiff's desk doing her work before plaintiff had decided whether to accept early retirement offer); *Calhoun v. Acme Cleveland Corp.,* 798 F.2d 559 (1st Cir.1986) (jury question presented when

plaintiff asked three times if he would retire and after rejecting retirement package, plaintiff demoted and sanctioned); *see also Samarzia v. Clark County*, 859 F.2d 88 (9th Cir.1988), *amended* 866 F.2d 1185 (9th Cir. 1989) (reasonable jury could have concluded that the county's proffered reasons for discharge were pretextual where younger employees with less seniority were selected and supervisor and co-workers referred to plaintiff as "senile" and sent him a memo with "retire now," circled).

On the other hand, in *Shealy v. Winston*, 929 F.2d 1009 (4th Cir.1991), a state circuit court was charged with age discrimination for giving the chief magistrate the option of retirement or demotion to the position of a regular magistrate. The plaintiff argued that he had been constructively discharged because: (1) he felt that having to work with a new chief magistrate would be "awkward," and (2) he was involuntarily forced to retire. The court held that potential awkwardness did not rise to the level of deliberately creating intolerable conditions to satisfy ADEA standards and further, that the retirement was voluntary because plaintiff was presented with two clear alternatives and adequate time to consider his options. *Id.*, at 1013. Accordingly, the court held that plaintiff failed to establish an adverse employment decision and upheld the district court's grant of summary judgment for the employer. *Id.*

■ In this case, plaintiff does not argue nor has he proffered any evidence to show that, had he stayed with the company as an RM, his working conditions would have been intolerable. Further, the evidence in the record reveals that absence of any of the types of aggravating factors associated with a demotion—first, although Fiascone had, at one time, worked under plaintiff for two to three years prior to the 1991 reorganization, Fiascone had been in a position equal to that of the plaintiff. As his supervisor, plaintiff gave Fisacone a high rating and there is no indication in the record that the working relationship between plaintiff and Fiascone would have been awkward or demeaning. Further, plaintiff neither argues nor proffers any evidence that the decision to accept the early retirement package was the product of

coercion from anyone employed by defendant. In fact, in his concise statement of facts, plaintiff indicates that his decision to accept early retirement during the 1991 reorganization was motivated by the fact that he would receive a *better* benefits package if he accepted the package at that time. Nowhere in his papers does plaintiff indicate that he was ever harassed or pressured by anyone in the defendant's employ to choose the retirement option. Evidence produced by defendant proves that, like *McCann*, the opposite is far more likely since Spafford and Frederickson took significant steps to investigate alternative positions for plaintiff's consideration and because plaintiff consistently received good performance ratings throughout his employment.

Based on the foregoing, I find that the options presented to plaintiff within the context of a corporate-wide reorganization and reduction in force—that of a demotion with no pay cut or early retirement—constitute an isolated incident devoid of any aggravating factors or circumstances which could lead a jury to conclude that plaintiff had been constructively discharged. Given the totality of the circumstances in this case, there is simply no evidence from which a jury could conclude that defendant's action of offering plaintiff early retirement or the Portland RM position created an "intolerable" working condition. Accordingly, plaintiff has failed to establish an essential element of his *prima facie* case and defendant is entitled to judgment as a matter of law.

■ Although I need not reach the issue, I also find that plaintiff has failed to come forward with evidence which could have established that defendant's proffered reasons for selecting Fiascone for the new RM position were pretextual. In response to defendant's motion, plaintiff proffered the following six items to support an inference of discrimination: (1) a comment made in 1985 by Ron Collins, a former supervisor, that plaintiff was not considered for a position in the Wisconsin sales department because of his age; (2) factual issues exist as to why Cobb gave plaintiff an MR+ rating for the 1989–90 period; (3) a comment made on an unknown date by a fellow employee named Mike

McKovich who expressed concern over whether plaintiff might have difficulty relating to college kids if he participated in recruiting for the company; (4) a comment made by Bill George, the former national sales manager, during a 1984 interview with plaintiff for a position in Los Angeles that the position was "usually reserved for younger guys"; (5) a conversation plaintiff had with Jerry Kuhl, vice president of human resources, in which Kuhl allegedly told plaintiff he agreed that there was age discrimination in the sales division and urged him to "sue, sue, sue;" and (6) an affidavit from plaintiff's expert, James Norberg, who indicates that he reviewed defendant's reorganization records and found "strong statistical evidence suggesting that age was a factor in determining which RMMs were to retain (sic) and which RMMs departed during the 1991 restructuring."

▋ First, the comments plaintiff attributes to Collins, McKovich, and George, even if established and admissible under the Federal Rules governing hearsay, fail to give rise to an inference of discrimination because they occurred six to seven years prior to the challenged decision in this case and were made by people who were not members of the reorganization Committee and had no connection to the decision to award the 1991 RMM position to Fiascone. Statements made by persons who are not a part of the decision making process are generally not probative of defendant's intent. *See e.g. Skagen,* 910 F.2d at 1499; *Smith v. Firestone Tire and Rubber Co.,* 875 F.2d 1325, 1330 (7th Cir.1989) (comments unrelated to decisional process insufficient to demonstrate decision based upon impermissible motives); *Mauter v. The Hardy Corp.,* 825 F.2d 1554, 1558 (11th Cir.1987) (affirming summary judgment for employer despite vice-president's statement that company was going to 'weed out the old ones,' in part, because vice-president played no role in decision to terminate plaintiff); and *Butler v. Portland General Electric,* 748 F.Supp. 783, 792 (D.Or. 1990), *aff'd,* 958 F.2d 377 (1992).

Next, although plaintiff indicates that "factual issues exist" over the reason Cobb gave him an MR+ rating instead of a CE rating, plaintiff fails to allege or offer any proof that the performance appraisal Cobb prepared for plaintiff was the product of age discrimination or that age played any factor in Cobb's determination. In addition, statements attributed to Kuhl that he may have been sympathetic to plaintiff's position, even if true, are not probative since there is no indication that Kuhl relied upon any specific evidence to support a general "feeling" that there was age discrimination in the department. Because Kuhl denies having made the statements at all, there is also no proper foundation for admission of the Kuhl's comments at trial. Kuhl's phone call to plaintiff and the message he left on plaintiff's answering machine, "sue, sue, sue," is simply too ambiguous to be of any probative value.[8]

As for the statistical opinion proffered by Norberg and countered by defendant's expert Michael Hand, I have carefully reviewed both affidavits and their supporting charts and affidavits, paying particular attention to Exhibit 1 to defendant's reply which is the complete listing of the RMM applicant pool, ages and offers made during the 1991 reorganization. On this point I concur in defendant's analysis at pages 15–20 of their reply memo and find that plaintiff's proffered statistical analysis fails to create a triable issue for at least two reasons. First, by combining all 62 applicants for analysis, plaintiff necessarily skews the results since the Committee actually used head-to-head match-ups instead of the top 37 from the pool of 62. *Compare e.g. Rose,* 902 F.2d at 1423 (rejecting statistics where disparity may be explained by other external factors). Second, defendant has proffered statistics which demonstrate that when the applicants are compared on a head-to-head basis, there is no statistical connection between age and selection for the RMM position, while there is a statistically significant relationship of almost 3 standard deviations between performance review ratings and selection. *Compare, id.*

I also note that plaintiff raised a disparate impact-type argument with respect to the

---

**8.** Plaintiff contends that Kuhl must have made the statement to encourage him to pursue his claims. Kuhl contends he was kidding.

sales potential portion of the MS & D rating system. Because the Committee did not rely upon the MS & D rating system to select Fiascone over plaintiff and, in fact, plaintiff never completed an MS & D because his performance reviews did not place him within the top 10% of the sales force, I need not address plaintiff's argument that 'sales potential' constitutes impermissibly subjective criteria having an adverse impact on older employees.

Finally, plaintiff's common law claim for wrongful discharge is premised upon an allegation that he was wrongfully discharged for resisting perceived age discrimination. However, plaintiff's sole "resistance" took place *after* the reorganization and after the decision was made to hire Fiascone. Because plaintiff's constructive discharge claim is premised upon the decision to offer plaintiff a demotion or retirement—his resistance could not have resulted in or been a "substantial factor" contributing the challenged action as required by Oregon law. *See Seitz v. Albina Human Resource Center*, 100 Or.App. 665, 675, 788 P.2d 1004 (1990).

### CONCLUSION

Based on the foregoing, I find that plaintiff has failed to establish a *prima facie* of age discrimination under the ADEA or constructive discharge under common law. Accordingly, defendant's motion for summary judgment # 18 is granted.