108 F.3d 1384
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Renato BAUTISTA, Plaintiff-Appellant,
v.
Joseph CROWLEY, individually and as President, University of
Nevada Reno; Denny A. Jones, individually and as Chairman,
Department of Chemical and Metallurgical Engineering; James
L. Hendrix, individually and as Dean, Mackay School of
Mines; Does I-X, inclusive, Defendants-Appellees.
 No. 95-17077.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 13, 1997.
Decided March 17, 1997.
 
 Before: SNEED, LEAVY, and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant, Dr. Renato Bautista, is a tenured professor at the University of Nevada Reno (UNR). Appellees Crowley, Hendrix, and Jones were respectively, at the time of this dispute, President of UNR, Dean of the Mackay School of Mines, and Chairman of the Chemical and Metallurgical Engineering Department (Department). At issue in this case is appellant's 1991 performance evaluation and UNR's subsequent denial of a salary increase based on that evaluation. Appellant claims that appellees denied him a constitutionally-required fair evaluation and proper hearing in violation of 42 U.S.C. § 1983.
 
 
 3
 The district court granted summary judgment in favor of appellees and we affirm.
 
 I.
 FACTS AND PROCEDURAL HISTORY
 
 4
 Bautista is employed by UNR's Mackay School of Mines as a tenured professor in its Chemical and Metallurgical Engineering Department (Department). The Department has, under the authority of UNR bylaws, established a procedure for carrying out annual performance evaluations of its faculty.[1] After reviewing the Department's evaluation, the Dean makes a final assessment. There are four classifications from which the Dean must ultimately choose--unsatisfactory, satisfactory, commendable, or excellent. The Dean's evaluation influences whether the faculty member is paid a merit salary increase.
 
 
 5
 Bautista objected to Chairman Jones's recommendation to Dean Hendrix that he be evaluated as "unsatisfactory." Jones based the "unsatisfactory" recommendation, at least in part, on information solicited from students in confidential interviews--a practice prohibited by Department bylaws. Responding to Bautista's charge, Dean Hendrix requested that the Mackay School's Personnel Committee conduct an independent review of Bautista's file. It did so and Dean Hendrix reevaluated him, in light of the Committee's report, as "commendable" overall.
 
 
 6
 Bautista then objected to Hendrix's decision, revising his grievance with the University to include both Dean Hendrix and Chairman Jones. In February 1993, UNR's Appeals Committee heard Bautista's grievance and concluded that the final evaluation by Dean Hendrix should stand. Bautista's "commendable" rating ranked him among the lower-rated members of the Department, and UNR ultimately denied him a merit salary increase for 1991.
 
 
 7
 Bautista brought suit in district court, alleging deprivation of his property and liberty interests without due process of law. The district court granted summary judgment against him and dismissed without prejudice his state law claims for want of supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). Bautista timely appealed the district court's grant of summary judgment.
 
 II.
 ANALYSIS
 A. Standard of Review
 
 8
 A grant of summary judgment is reviewed de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1994). Viewing the evidence in the light most favorable to the nonmoving party, this court must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 B. Authentication Requirement
 
 9
 As a preliminary matter, appellees argue that all but two of Bautista's fifty-six pieces of evidence are insufficient for summary judgment purposes. Appellees contend that Bautista's failure to authenticate the evidence, through accompanying affidavits, precludes this court from considering it. However, appellees did not move to strike the allegedly defective evidence at the district court level, and therefore, waive any objection to the evidence on appeal. See Allen v. Scribner, 812 F.2d 426, 435, n. 18, amended, 828 F.2d 1445 (9th Cir.1987).
 
 C. Due Process
 
 10
 A threshold requirement to a procedural due process claim is the deprivation of a liberty or property interest protected by the Constitution. Board of Regents v. Roth, 408 U.S. 564, 569 (1972); Wedges/Ledges of California, Inc. v. City of Phoenix, 24 F.3d 56, 62 (9th Cir.1994). Thus, we first determine, not whether appellant has received adequate process, but whether the interests he asserts are entitled to constitutional protection. Because he fails to demonstrate that appellees have deprived him of an interest protected by the Due Process Clause of the Fourteenth Amendment, we hold that he has not been deprived of his constitutional rights.
 
 1. Property Interest
 
 11
 Appellant argues that he has a constitutionally protected property interest in the fair application of the Department's evaluation procedures. Appellees, by failing to follow University procedures, he says, violated his right to due process.
 
 
 12
 This approach mistakes the "procedure" with the "right" being protected. To recognize a constitutionally protected interest in the procedures themselves, as appellant would have us do, would stand the due process analysis on its head. See Clemente v. United States, 766 F.2d 1358, 1365, n. 8 (9th Cir.1985), cert. denied, 474 U.S. 1101 (1986). Appellant cannot have a property interest in process alone.[2] Rather, "the purpose of the procedural safeguard ... is the protection of a substantive interest to which the individual has a legitimate claim of entitlement." Id. Here the substantive interest could be an entitlement to either a relatively high performance rating or a merit salary increase. We address each in turn.
 
 
 13
 To have a protected property interest in a benefit, a person must have a "legitimate claim of entitlement to it." Roth, 408 U.S. at 577. Such an expectation of entitlement typically is derived from "existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits." Id. It is possible that UNR could create a legitimate claim of entitlement to specific procedural requirements. This could be the case were the procedures intended to be significant and mandatory restrictions on UNR's decision making. See Goodisman v. Lytle, 724 F.2d 818, 820 (9th Cir.1984). That is not the case here, however.
 
 
 14
 Nothing in the Department's evaluation criteria creates an expectation of entitlement to a high performance rating. To the contrary, they reserve a significant measure of discretion to UNR decisionmakers. Cf. Wedges/Ledges of California, Inc., 24 F.3d at 63 (recognizing a legitimate expectation of entitlement where the provision substantially constrains the discretion of the decisionmaker).
 
 
 15
 For instance, the Department bylaws acknowledge that certain "criteria are subjective." Furthermore, the bylaws' evaluation criteria apply only to the recommendation of the Department's Personnel Committee. The recommendation of the Chairman and the decision of the Dean, while based on the Committee's assessment, are discretionary. This lack of mandatory language directing the decisions of both the Chairman and the Dean undermines appellant's claim of entitlement. See Jacobson v. Hannifan, 627 F.2d 177, 180 (9th Cir.1980).
 
 
 16
 UNR's evaluation process implicitly recognizes that which has deterred courts from substituting their judgment for the judgment of university administrators: Faculty evaluations are inherently subjective. See Kunda v. Muhlenberg College, 621 F.2d 532, 547-48 (3d Cir.1980); EEOC v. University of Notre Dame Du Lac, 715 F.2d 331, 339 (7th Cir.1983).
 
 
 17
 It follows that neither the UNR nor the Department bylaws create a legitimate claim of entitlement to a merit pay increase. See Veit v. Heckler, 746 F.2d 508, 511 (9th Cir.1984).[3] The decision concerning merit pay is relatively unrestricted by the University's Code and bylaws. The Dean's allocation of merit salary increases is influenced by the annual evaluation, but the decision is open to other factors as well, e.g., the availability of merit funds.[4]
 
 
 18
 In short, the Department bylaws "simply proceduralize[ ] the information gathering process and serve[ ] to facilitate the [Dean] in reaching a decision by ensuring that he would have written opinions of relevant persons in the university hierarchy before him when he was ready to act." Lovelace v. Southeastern Massachusetts University, 793 F.2d 419, 422 (1st Cir.1986). They do not, however, confer a protected property interest in either a favorable evaluation or merit pay. Bautista's "unilateral expectation" that he was to receive a favorable evaluation and a merit increase is not enough to implicate the Constitution. See Roth, 408 U.S. at 577.
 
 2. Liberty Interest
 
 19
 Bautista also invokes his liberty interest and argues that appellees caused damage to his reputation and marketability. He claims to have suffered various episodes of on-the-job harassment at the behest of Chairman Jones and Dean Hendrix, as well as embarrassment from having his peers know of his "unsatisfactory" evaluation. He also claims a loss of potential employment opportunities at other institutions.
 
 
 20
 Not only was Bautista accorded due process but harm to Bautista's reputation alone, even if proved, is not redressable under § 1983. The Supreme Court has rejected the proposition that an individual's reputation "is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." Paul v. Davis, 424 U.S. 693, 701 (1976). Accordingly, "this circuit permits section 1983 suits only when the defamation which causes the reputational damage is accompanied by additional harm, usually loss of employment." Partington v. Gedan, 961 F.2d 852, 861 (9th Cir.1992). Bautista did not lose his job, and his argument that the 1991 evaluation threatens possible loss of employment in the future is contradicted by the provisions of the UNR Code. Bautista's claim of harassment is likewise inappropriately brought under § 1983. No one is free from petty annoyances on the job. His contention that he has been harassed is neither a deprivation of liberty nor property. Finally, Bautista's unsupported contention that the actions of appellees have cost him employment opportunities at other institutions falls short of alleging an injury, much less one of constitutional proportions. See Merritt v. Mackey, 827 F.2d 1368, 1373 (9th Cir.1987) ("An individual has a liberty interest in employment ... if the [personnel action] ... effectively precludes future work in the individual's chosen profession.") (internal quotation and citation omitted). Appellant enjoys today the same position and status he held at the time of this dispute. Inasmuch as the inclusion of Chairman Jones's evaluation in Bautista's personnel file may have caused him embarrassment, it was not "stigmatizing." See id. In any event, Dean Hendrix's subsequent evaluation--rating Bautista as "commendable"--is by Bautista's own admission the next page in the file.
 
 III.
 CONCLUSION
 
 21
 Bautista's due process claims fail. We, therefore, uphold the grant of summary judgment in favor of appellees.
 
 
 22
 AFFIRMED.
 
 REINHARDT, Circuit Judge, concurring:
 
 23
 I concur in the judgment and in part in the majority's analysis. From the face of the policy, the check-mark in the box denominated "An organization other than a partnership or a joint venture" would seem to refer only to the named insured, Venture Corporation, thereby leaving the insured status of Cote D'Azur Developers and Cote D'Azur Associates an open question or at the very least ambiguous. However, National conceded at oral argument that the check-mark in the box constituted a declaration that the additional named insureds--Developers and Associates--who were listed on an entirely different page, the addendum, were not partnerships or joint ventures. In light of this concession, I am compelled to agree with the majority that the Northfield policies did not cover Gibraltar Management by virtue of its status as a joint venturer in Associates, and I join in the remainder of the majority's analysis and conclusions.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Department requires each faculty member to provide the Department Chairman with documentation of his or her performance during the evaluation period in the areas of teaching, research, service, and professional activity. Following criteria set forth in the Department bylaws, the Department's Personnel Committee evaluates the collected information and prepares a written recommendation which is returned to the Chairman. The Chairman discusses the Committee's evaluation with the faculty member, then forwards it along with the Chairman's independent recommendation to the Dean
 
 
 [2]
 Consequently, appellant's argument that he has a protected property interest in the fair application of UNR's grievance procedures must also fail
 
 
 [3]
 This circuit recognized a protected property interest in merit pay where the Santa Ana City Charter treated the denial of a merit increase as a demotion, and further provided that an employee may be demoted only for certain specified reasons. Sanchez v. City of Santa Ana, 915 F.2d 424, 429 (9th Cir.1990), cert. denied, 502 U.S. 957 (1991). This court's holding in Sanchez is not applicable here. There is no reason to believe that UNR treats the denial of merit pay or a "commendable" evaluation as a demotion, constructive or otherwise. In fact, the UNR Code requires two consecutive "unsatisfactory" evaluations before a faculty member's job is at risk
 
 
 [4]
 UNR Bylaw 43(b) provides for the possibility that funds may not be available for merit pay